UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DeAVERY Q. LYONS, ) | Case No. 4:08CV228 |
| ) | |
| Petitioner, ) | JUDGE PATRICIA A. GAUGHAN |
| ) | |
| v. ) | Magistrate Judge George J. Limbert |
| ) | |
| STUART HUDSON, Warden, ) | REPORT AND RECOMMENDATION |
| ) | OF MAGISTRATE JUDGE |
| Respondent. ) | |
| ) | |

On January 22, 2008, DeAvery Lyons ("Petitioner"), *pro se*, filed a petition for writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. ECF Dkt. #1. Petitioner seeks relief from a judgment of conviction entered by the Trumbull County, Ohio Court of Common Pleas for: one count of rape with a firearm specification, in violation of Ohio Revised Code ("O.R.C') §§ 2907.02(A)(1)(b)(2) & (B); and one count of kidnapping, in violation of O.R.C. §§ 2905.(A)(2) & (C). *Id*; *see also* ECF Dkt. #6, Ex. 5. On July 14, 2008, Warden Bennie Kelly ("Respondent")[1] filed a return of writ. ECF Dkt. #6. Petitioner did not file a traverse. The case was referred to the undersigned to issue a report and recommendation. For the following reasons, the undersigned recommends that the Court DISMISS the instant petition, in its entirety, with prejudice:

**I. FACTUAL BACKGROUND**

The Eleventh District Court of Appeals of Ohio set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6 th Cir. 1998), cert. denied, 119 S.Ct. 2403 (1999). As set forth by the Eleventh District Court of Appeals, the facts are:

{¶ 1} . . . Lyons was convicted of one count of rape, with a firearm specification, and

---

[1] Counsel for Respondent notes that Petitioner was transferred to Trumbull Correctional Institution, where Bennie Kelly, not Stuart Hudson is the warden. ECF Dkt. #6 at n.1; *see also* ECF Dkt. #5.

one count of kidnapping. He received a life sentence because of the force element and the fact the victim was under thirteen years old.

{¶ 2} The female victim in this matter was twelve years old at the time of the incident. She lived in the same neighborhood as Lyons' grandmother. Lyons would periodically visit his grandmother. The victim knew Lyons, because she would walk his dogs.

{¶ 3} On the day in question, the victim was walking with two male friends. The victim suggested they stop and ask Lyons if they could walk his dogs. The boys remained near the street, while the victim went to the door to ask about walking the dogs.

{¶ 4} According to the victim, Lyons asked her to step inside of the house, where he asked to kiss her, and she told him no. Following the kiss, Lyons put a gun to the victim's head and told her he would kill her if she told anyone about what he did. Thereafter, Lyons inserted his finger into the victim's vagina and, then, inserted his tongue into her vagina. Finally, he unzipped his pants and engaged in sexual intercourse with the victim. The victim told Lyons she had to get home to babysit, and he let her leave.

{¶ 5} The victim told one of the boys what had happened. The boy told the victim's mother about the incident. The mother contacted the police. In addition, she went to ask Lyons about the incident. Lyons was in a car with his friend, Sean Bush. The mother asked Lyons to come to her house to discuss the incident. Initially, Lyons was interested; however, when the mother told him the police would be there, he changed his mind. While the mother was talking to Lyons, she noticed he was holding a white plastic bag. As the mother was pulling away, she watched Lyons get out of the car and run behind some houses.

{¶ 6} Melissa Putnam and Christin Gulliford witnessed the encounter between Lyons and the victim's mother. After the encounter ended, they watched Lyons and Bush get out of the car and run behind the houses. Putnam testified that Lyons put a gun into a Save-A-Lot bag as he got out of the car. Gulliford did not see a gun, but observed Lyons carrying a plastic bag. Putnam and Gulliford were still present when the police arrived, and they informed the police the direction in which Lyons and Bush ran and suggested that they were in one of two houses.

{¶ 7} Lyons and Bush went to Tanya Warfield's house. Warfield was a friend of Bush and Lyons. According to Bush, who testified for the defense, he and Lyons went to her house on prior occasions to take drugs. Warfield testified that Lyons appeared nervous and was closing the blinds. She observed police cars outside her residence. Thereafter, she told Lyons and Bush to leave her house because she did not want to be involved in whatever the situation was.

{¶ 8} Lyons and Bush left the house, and Lyons was arrested. Warfield gave a white plastic bag to the police. The bag was left on a dog food container in her house, and Warfield stated that Lyons entered her house with the bag. Inside the bag, the police found a loaded handgun and crack cocaine.

{¶ 9} Lyons was taken to the Warren police station. He was interviewed by Lieutenant Joseph Marhulik and Detective Sergeant John Delbene. Prior to the interview, he was read his Miranda warnings.[FN1] He was initially questioned about the events. Thereafter, he signed a Miranda rights waiver form. Then, he participated in an interview in which Detective Delbene typed out the questions and answers. At the conclusion of the interview, Lyons signed a printed copy of the questions and answers. The entire

process was videotaped. In his statement, Lyons admitted to performing oral sex on the victim. He denied having intercourse with her or using a gun during the incident.

> FN1. *See Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

{¶ 10} In October 2002, Lyons was charged with one count of rape, in violation of R.C. 2907.02(A)(1) and (2) and (B), with a firearm specification, and one count of kidnapping, in violation of R.C. 2905.01(A)(2) and (C). A bill of particulars was filed indicating the sexual conduct in the rape count concerned oral, digital, and penile penetration. In September 2003, a superseding indictment was issued. This indictment charged Lyons with two counts of rape, both in violation of 2907.02(A)(1) and (2) and (B), with firearm specifications; one count of kidnapping in violation of R.C. 2905.01(A)(2) and (C), with a firearm specification; possession of cocaine, in violation of R.C. 2925.11(A) and (C)(4)(c), with a firearm specification; and one count of receiving stolen property, in violation of R.C. 2913.51(A) and (C). A new bill of particulars was not filed in relation to the superseding indictment. Lyons pled not guilty to the charges against him.

{¶ 11} Lyons filed a motion to suppress the statement he gave to police. A suppression hearing was held. At the hearing, Detective Delbene and Lieutenant Marhulik testified for the state about the custodial interrogation. In addition, the state introduced a copy of the Miranda rights waiver form and the videotape of the interview. Lyons did not testify or introduce evidence at this hearing. After reviewing the evidence presented, the trial court denied Lyons' motion to suppress.

{¶ 12} Lyons filed a motion to dismiss the superseding indictment. The morning of trial, the trial court held a hearing on Lyons' motion. The trial court dismissed Count 2 of the superseding indictment, which was rape in violation of 2907.02(A)(1) and (2) and (B), with a firearm specification; the firearm specification attached to Count 3 of the superseding indictment, which was the kidnapping charge; and Count 5 of the superseding indictment, which was receiving stolen property, in violation of R.C. 2913.51(A) and (C). The trial court renumbered the superseding indictment so that count one was rape, with a firearm specification; count two was kidnapping, and count three was possession of cocaine, with a firearm specification.

{¶ 13} Thereafter, a jury trial was held. The jury found Lyons guilty of rape, with a firearm specification, and of kidnapping, also with a firearm specification. The jury found Lyons not guilty of the possession of cocaine charge and the accompanying firearm specification.

{¶ 14} Pursuant to R.C. 2907.02(B), Lyons was sentenced to life in prison on the rape conviction, to be served subsequent and consecutive to a three-year prison term for the firearm specification. For the purposes of sentencing, the trial court merged the kidnapping conviction into the rape conviction.

ECF Dkt. #6, Ex. 15 at 1-5; *State v. Lyons*, Case No. 2004-T-0035, 2005 WL 2133698 at *1-*3 (Ohio App. 11 Dist. Sept. 2, 2005), unreported.

## II.     PROCEDURAL BACKGROUND

### A.     State Trial Court

In September of 2002, the Grand Jury for Trumbull County, Ohio returned an indictment

against Petitioner, charging: (Count 1) rape, specifically, sexual contact with a minor under the age of thirteen, in violation of O.R.C §§ 2907.02(A)(1)(b)&(2)&(B), with a firearm specification pursuant to O.R.C. § 2941.145; and (Count 2) kidnapping, in violation of O.R.C. §§ 2905.01(A)(2)&(C). ECF Dkt. #6, Ex. 3.

In September of 2002, the Grand Jury for Trumbull County, Ohio issued a superseding indictment against Petitioner, charging: (Count 1) rape, specifically, sexual contact with a minor under the age of thirteen, in violation of O.R.C §§ 2907.02(A)(1)(b)&(2)&(B), with a firearm specification pursuant to O.R.C. § 2941.145; (Count 2) rape, specifically, sexual contact with a minor under the age of thirteen, in violation of O.R.C §§ 2907.02(A)(1)(b)&(2)&(B) with a firearm specification pursuant to O.R.C. § 2941.145; (Count 3) kidnapping, in violation of O.R.C. §§ 2905.01(A)(2)&(C)with a firearm specification pursuant to O.R.C. § 2941.145; (Count 4) possession of cocaine, in violation of O.R.C. §§ 2925.11(A)&(C)(4)(c) with a firearm specification pursuant to O.R.C. § 2941.141; and (Count 5) receiving stolen property, in violation of O.R.C. §§ 2913.51(A)&(C). ECF Dkt. #6, Ex. 4.

On January 26, 2004, Petitioner appeared in court for trial by jury. ECF Dkt. #6, Ex. 5. Defendant moved to dismiss Counts 2 and 5 of the superseding indictment as well as the firearm specification in Count 3 of the superseding indictment. *Id*. The trial court granted the motion and renumbered the indictment so that Count 1 charged rape, with a firearm specification, Count 2 charged kidnapping, and Count 3 charged possession of cocaine, with a firearm specification. *Id*. (All further references to the charges against Petitioner will relate to the superseding indictment as amended by the trial court, unless otherwise noted.)

On January 30, 2004, a jury found Petitioner guilty of Count 1 (rape with a firearm specification) and Count 2 (kidnapping). ECF Dkt. #6, Ex. 5. The jury found Petitioner not guilty on Count 3 (possession of cocaine with a firearm specification). *Id*.

On March 5, 2004, the trial court sentenced Petitioner to a mandatory prison term of life and an additional mandatory term of three years of imprisonment for the firearm specification. ECF Dkt. #6, Ex. 5.

### B. Direct Appeal – Ohio Court of Appeals

On April 13, 2004, Petitioner filed a notice of appeal from his conviction. ECF Dkt. #6, Ex. 9. On October 21, 2004, Petitioner filed a supporting brief raising the following assignments of error:

I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS HIS CONFESSION.

II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S REQUEST FOR A JURY INSTRUCTION THAT INCLUDED THE LESSER INCLUDED OFFENSE OF GROSS SEXUAL IMPOSITION.

III. THE APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

ECF Dkt. #6, Ex. 11. On September 6, 2005, the Ohio Court of Appeals for the Eleventh District affirmed Petitioner's conviction. ECF Dkt. #6, Ex. 13.

### C. Direct Appeal – Supreme Court of Ohio

On October 26, 2005, Petitioner filed a notice of appeal to the Supreme Court of Ohio. ECF Dkt. #6, Ex. 14. In his contemporaneously filed memorandum in support of jurisdiction, Petitioner asserted the following proposition of law:

1. Where the evidence placed before a jury in support of a rape allegation may resemble [sic] be viewed by the jury as constituting either sexual conduct or sexual contact, failure to instruct on a lesser included offense involving sexual contact is a denial of liberties secured by the United States and Ohio Constitutions. U.S. CONST. amend. V and XIV; OHIO CONST. art. I, §§ 1, 2, 10, and 16.

ECF Dkt. #6, Ex. 15. On February 8, 2006, the Supreme Court of Ohio denied jurisdiction in an unexplained opinion. ECF Dkt. #6, Ex. 17.

### D. Federal Habeas Corpus Petition

On January 22, 2008, Petitioner filed the instant petition seeking relief from his state court conviction. ECF Dkt. #1; *see Towns v. U.S.*, 190 F.3d 468, 469 (6th Cir. 1999) citing *Houston v. Lack*, 487 U.S. 266, 270-74 (1988) (a *pro se* prisoner's petition is considered to be filed on the day he delivers it to prison authorities). Petitioner presents the following ground for relief:

-5-

> **Ground One:**
>
>> Where the evidence placed before a jury in support of a rape allegation may reasonable [sic] be viewed by the jury as constituting either sexual conduct or sexual contact, failure to instruct on a lesser included offense involving sexual contact is a denial of liberties secured by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 1, 2, 10 and 16 of the Ohio Constitution.
>
> **Supporting Facts:**
>
>> At trial, the victim testified that Petitioner penetrated her vagina with his penis and finger.  Petitioner's trial counsel impeached her by using her prior statements that she was not sure if Petitioner put his penis inside her.  The court of appeals erred by finding that "there was no evidence presented regarding sexual contact" and concluded that Petitioner was not entitled to a jury instruction on gross sexual imposition, since the victim's testimony clearly described sexual conduct.  The court of appeals [sic] opinion implicitly suggests that it would allow the lesser instruction only if the Petitioner offered evidence that there was sexual contact but not sexual conduct.  This flies in the face of the precepts of the privilege against self-incrimination and the requirement that the government prove each element beyond a reasonable doubt.  Under these circumstances, the decision of the court of appeals is contrary to U.S. Supreme Court precedent.
>
>> Accordingly, the case should be remanded to the trial court for a new trial.

ECF Dkt. #6, Ex. 15.  On July 14, 2008, Respondent filed a return of writ.  ECF Dkt. #6.  Petitioner did not file a traverse.

## III.     PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a writ of federal habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

Respondent contends that the instant petition is time-barred and should be dismissed.  ECF Dkt. #6 at 8-15.

In general, a state prisoner seeking habeas corpus relief pursuant to 28 U.S.C. § 2254 must comply with the statute of limitations period set forth in 28 U.S.C. § 2244, which provides:

> (d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (d)(2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The statute of limitations is tolled for any period of time in which a properly filed petition for post-conviction relief is pending before the state courts. *Jurado v. Burt*, 337 F.3d 638, 640 (6th Cir. 2003); see 28 U.S.C. § 2244(d)(2).  To determine if a state proceeding will toll the statute of limitations, the Sixth Circuit has held that:

> A state petition for post-conviction or other collateral review that does not address one or more of the grounds of the federal habeas petition in question is not a review 'with respect to the pertinent judgment or claim' within the meaning of 28 U.S.C. § 2244(d)(2), and therefore does not toll the one-year AEDPA statute of limitations.

*Austin v. Mitchell*, 200 F.3d 391, 395 (6th Cir. 1999).  Further, the "tolling provision does not ... 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run.  Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations."  *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (quoting *Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998)).

The one-year statute of limitations under Section 2244 is subject to equitable tolling when a petitioner's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the petitioner's control.  *Dunlap v. United States*, 250 F.3d 1001, 1004 (6th Cir. 2001); *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000).  The Sixth Circuit has stated that "federal courts sparingly bestow equitable tolling." *Graham-Humphreys*, 209 F.3d at 560-61; *Jurado*, 337 F.3d at 642.  When determining whether

-7-

equitable tolling is appropriate, the court must consider: "(1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." *Dunlap*, 250 F.3d at 1008; *Miller v. Collins*, 305 F.3d 491, 495 (6th Cir. 2002). These factors are not comprehensive and not all of the factors are relevant in all cases. *Cook*, 295 F.3d at 521. Whether equitable tolling is appropriate is a case-by-case analysis. *Id*. The petitioner bears the ultimate burden of persuading the court that he or she is entitled to equitable tolling. *Vroman*, 346 F.3d at 605.

## IV. STANDARD OF REVIEW

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, AEDPA governs this Court's review of the instant case. Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added). In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct

-8-

>governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

>A. Decisions of lower federal courts may not be considered.
>
>B. Only the holdings of the Supreme Court, rather than its dicta, may be considered.
>
>C. The state court decision may be overturned only if:
>
>>1. It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' (the Supreme Court precedent must exist at the time of petitioner's direct appeal) or;
>>
>>2. the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or
>>
>>3. 'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or
>>
>>4. the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

> D. Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'
>
> E. Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993). The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## V. ANALYSIS

The undersigned recommends that the Court dismiss the instant petition, in its entirety, as

Case: 4:08-cv-00228-PAG  Doc #: 7  Filed:  10/15/08  11 of 13.  PageID #: 768

time-barred because Petitioner has not complied with the AEDPA filing limitations and he has failed to demonstrate cause and prejudice.

Respondent concedes that Petitioner's direct appeal to the Supreme Court of Ohio was timely.  ECF Dkt. #6 at 11.  Therefore, the Court's analysis should begin with the Supreme Court of Ohio's judgment entry.  The Supreme Court of Ohio denied Petitioner's direct appeal on February 8, 2006.  ECF Dkt. #6, Ex. 17.  Petitioner had 90 days, or until May 9, 2006, to seek certiorari from the United States Supreme Court.  *See* Rule 13 of the Rules of the Supreme Court of the United States.  Since Petitioner did not seek certiorari from the United States Supreme Court, his conviction became final the next day, May 10, 2006.  28 U.S.C. § 2244(d)(1)(A); *Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000).  Further, Petitioner does not contend that he is entitled to a later starting date pursuant to 28 U.S.C. § 2244(d)(1)(B)-(C).  Therefore, absent any tolling, his Petition was due on or before May 10, 2007.

Petitioner filed no appeals that would toll the AEDPA statute of limitations.  Therefore, the Court must proceed to determine if equitable tolling applies.

Petitioner alleges that he was unable to file his petition within the AEDPA filing period because he was transferred to the custody of the Allegheny County, Pennsylvania Sheriff on January 14, 2005 in order to resolve pending criminal cases in Pennsylvania.  ECF Dkt. #1 at 14.  Petitioner claims that he was not returned to the custody of the Ohio Department of Rehabilitation and Correction until August 14, 2007.  *Id*.  Respondent acknowledges that records support the time-line underlying Petitioner's claim.  *See* ECF Dkt. #6 at 13-14.  Respondent contends, however, that Petitioner's transfer to Pennsylvania does not justify equitable tolling because Petitioner has failed to explain why he was unable to file a federal habeas petition challenging his Ohio conviction while he was imprisoned in Pennsylvania.  *Id*. at 14.

The undersigned will analyze the case using the *Dunlap* standard.  Turning to the first two prongs of the *Dunlap* standard , the undersigned notes that Petitioner has not alleged or demonstrated a lack of notice of the filing requirement or a lack of constructive knowledge of the filing requirement.  Therefore, neither of those prongs are satisfied.

-11-

With respect to the third prong – the exercise of diligence in pursuing one's rights – Petitioner has not identified or detailed any efforts he undertook to pursue his federal habeas petition while in custody in Pennsylvania. For example, Petitioner does not allege that he requested legal materials related to his Trumbull County, Ohio conviction so that he could prepare a habeas petition while in custody in Pennsylvania.

In regard to the fourth prong of *Dunlap* – absence of prejudice to the respondent – Respondent contends that, if a later start date is applied, Respondent will be prejudiced by incurring the time and expense of defending an otherwise time-barred habeas action. ECF Dkt. #6 at 14. The undersigned fails to understand this argument because Respondent's brief fully addresses the merits of the petition. *See* ECF Dkt. #6 at 15-25. Therefore, it is unclear what additional resources Respondent would have to expend if the Court were to apply equitable tolling. Regardless, "the absence of prejudice to the defendant, standing alone, is insufficient to justify equitable tolling in the absence of an independent basis for invoking the doctrine." *Brewer v. Technicolor Warehouse*, Case No. 07-2350-B/V, 2007 WL 1857322, (W.D.Tenn. June 26, 2007), unreported (internal quotations omitted); *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151-52 (1984) (per curium).

Turning to the fifth *Dunlap* factor – the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim – the undersigned again notes that Petitioner does not contend that he was unaware of any filing requirement. Further, he does not detail any efforts to seek the assistance of counsel or a law librarian at the prison in order to discover the legal requirements for filing a § 2254 petition.

Since Petitioner has failed to satisfy his burden under *Dunlap*, the undersigned recommends that the Court decline to apply equitable tolling.

Lastly, the Court should consider actual innocence. The Sixth Circuit has held that the Constitution requires an actual innocence exception to AEDPA's statute of limitations. *Souter v. Jones*, 395 F.3d 577, 599 (6th Cir. 2005). The Southern District of Ohio has recently summarized the burden for establishing actual innocence:

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway [the AEDPA statute of limitations] and argue the merits of his underlying claims." *Schlup v. Delo*, 513 U.S. 298, 316 (1995).  Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317. **To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."** *Id.* at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).  "**To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence**-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324.  The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321.

*Medina v. Wolfe*, No. 2:06-CV-921, 2007 WL 2323381 at *9, slip op. (S.D. Ohio Aug. 9, 2007) (emphasis added).

Here, Petitioner does not assert or demonstrate actual innocence.  Therefore, he is not entitled to review under the actual innocence exception to the AEDPA filing limitation.

## VI.   CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court DISMISS the instant petition, in its entirety, with prejudice.

Date: October 15, 2008            */s/George J. Limbert*
                                   GEORGE J. LIMBERT
                                   UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).